192100 and number 192217, Emilio Nelson Gomez da Silva v. Marcellina de Aredes Thank you Good morning, Your Honors. In the name of the courts, Alexandre Oliveira, Local Rule 46.0-F Council, on behalf of the appellant. We would like to reserve two minutes for rebuttal time. Yes. Thank you. Home is where I live in America. Brazil is where I'm from, but it is not my home. So testified ACA, the party's daughter, and the child at issue in this case. Marcellina seeks a reversal of the district court's judgment, ordering ACA back to Brazil under the hate convention. And she does so under two reasons, which alone and together warrant reversal. The first reason is that ACA, who has now lived in the United States for over three years, is well settled here. The second reason is that returning ACA to Brazil will expose her to a grave risk of physical, psychological harm. Alternatively, Marcellina is seeking a remand on the grounds that the district court abused its discretion in rejecting her motion for a new trial. So I'll turn first to the well settled issue. The district court found, and I quote, that the evidence certainly supports that ACA has developed meaningful relationships and lasting emotional bonds with the community in East Boston. That includes her schooling and her participation in community activities. End of quote. The evidence of the record amply supports these connections. Through the three years that ACA has lived here, she's excelled at schooling. She's made meaningful friendships. Counsel, I thought that generally you looked at the well settled question as of the time the Hague petition is brought and that delays in litigating the matter really don't count one way or the other. Is that correct? Your Honor, that's correct. Okay, so would you focus then as of the well settled evidence as of the time of the bringing of the petition and tell us why there was clear error? Of course, Your Honor. All of this was true as well when this petition was brought. ACA had been living in the United States for 23 months by then, even though now you knew within weeks of her removal of her location. The now settled inquiry is reviewed as to each individual factor, de novo, and the equitable weighing of the factors as a whole is reviewed by this court for an abuse of discretion, under Yerman v. Yerman, a 2013 decision. Now, we submit that the court's decision here was an abuse of discretion because it improperly granted this positive weight to one of the factors in this inquiry, which is immigration, to the detriment of all others. That's the only way of reconciling. It's finding that ACA had these meaningful and substantial connections with this order of return. However, the law insisted for some... I don't read the district court as having given this positive weight to the fact that the asylum application was problematic, shall we say. It would point to the district court's use of the fact that it was a considerable period of time before your client chose to file an asylum application, and it was after the petition was brought. She said that she told the immigration officer when she entered the country that she wanted asylum, but there was no pursuit of an asylum application until after the petition was brought. Why couldn't the district court consider that fact? Your Honor, because unfortunately, Marcellini suffered ineffective assistance by the first immigration attorney that she engaged here. Now, asylum can only be filed within the first year of entering the United States. Unless you show an exception. Exactly, and that's a pretty hard bar. The fact that the immigration courts recognized that Marcellini had, in fact, been ineffectively assisted by her first counsel, who essentially she paid for doing nothing during these two years. Is that in the record? Well, that's in Marcellini's asylum petition, too. It's in her petition? It's not established? I believe she did testify that she had... A claim is different than a ruling. That's correct, Your Honor. Okay, so let's go back. Was there an error in the district court looking at that evidence? Yes, Your Honor, we would still submit that there was. The fact is that at trial, Marcellini was able to represent to the district courts that she believed that her asylum process would take between two to three years to be adjudicated, during which time she would remain with the... before removal was issued. District courts also have considered that to find that the fact that Marcellini and ACA had undefined immigration status at the time of trial did not demonstrate that ACA wasn't settled in the United States. So we would... Counsel, on the immigration issue, I thought the district court was pretty explicit in saying that it thought that the prospects for success were very dim, right? And I think, in effect, the district court said, given that whenever the asylum claim is addressed, she and her mother will not be able to stay in the States, we might as well disrupt now rather than later. Isn't that in effect what the district court said? That is what the district court said, Your Honor, but we submit that that's not the test under Article 12 of the Convention. Article 12 is concerned with whether... Well, I guess your position would be, perhaps not dispositive, but that was giving too much weight to the lack of any likelihood of success on the immigration. Right, and it was improper because of that point and because of the fact that, at the very least, for the next three years, ACA's position in the United States would still remain undisturbed. And Article 12, per decisions in the District Court of Appeals, like the Ninth Circuit's decision in CSB, is concerned with the present, with the question of whether ACA is settled right now. The issue here is that the one-year period during which a well-served defense cannot be brought functions as a proxy for the development of these meaningful and substantial connections with the United States. Once that one-year period is passed, and that period is not subject to equitable tolling under Lozano, then the child's interest in settlements must be concerned. And that interest is taken into consideration beyond a parent's interest in litigating custody in the country of prior residence. So, per the... Counsel, the District Court was... explicitly was troubled by... the mother took the child out of the country illegally and was concerned about, in effect, rewiring that conduct by finding that now the child was in a well-settled condition. Was it appropriate, in your view, for the District Court to factor that into its well-settled determination? Your Honor, we believe it was not appropriate simply because of the fact that that's not a concern once that one-year period is passed. What the District Court, in effect, did was punish ACA for Marcellini's actions without taking into consideration the fact that ACA is well-settled here, without taking into consideration the fact that the Convention is concerned with avoiding an additional uprooting of these meaningful and substantial connections to the detriment of the child, regardless of what the actions of the parents here do, too. So, the fact is that by focusing on these actions and on the fact that ACA enjoyed these connections, that these connections were not a risk for the foreseeable future, the District Court abused its discretion by improperly granting weight on this one factor and ignoring all other factors in the Article 12, into the Article 12 inquiry. Counsel, suppose we were to agree that the District Court was wrong in concluding that she was not well-settled. What would follow from that? Would we have to remand for the District Court to then engage in the kind of equitable analysis that it can engage in? In other words, even if the child is found to be well-settled, taking into consideration equitable factors, the child can still be returned. Isn't that correct? That's true, but we submit that the equities don't warrant that decision. We aren't aware of any... We should make that decision? Yes, John. We submit that this Court can make that decision to reverse, based on the improper weights granted to this factor alone, but in the alternative, in getting into the subsidiary argument, the fact is that the notice that the Immigration Court issued to Marcellino on October 30, 2019, granted additional lights on Marcellino's and ACA's rights to remain in the United States through 2023, and that notice, because it strongly undercuts the District Court's reason for allowing this petition, for ordering ACA back to Brazil. We would submit that the District Court also has the open trial to gauge the effect. The District Court seemed to be well aware of the fact that the immigration proceedings could play out over a substantial period of time. It was not aware of that specific time frame, but the District Court certainly recognized that it can take some time for that to play out. Isn't that correct? Well, the District Court was aware, as I said, that Marcellino had been in consultation with the Immigration Council, and that the petition was pending to be filed. But I think that our position would be that the notice granted structure to Marcellino's submission, that she herself and ACA would be able to remain in the United States for at least three years after the decision. You know, I want to go back to one of the premises. The District Court says, holds. I'm satisfied that the transition, while perhaps challenging, is not wrenching somebody out of a well-settled position in the United States. And then says, as to the immigration consequences, does not say you're not going to win, but does say you are here already in unsettled circumstances because of your status. And how is that an error of law? The fact of the matter is, her circumstances were unsettled precisely because of this, and in part because of the mother's delay in applying for asylum. Well, Your Honor, we would again submit that the three-year period during which they would be able to remain here is lengthy enough. No, you're not answering my question. What's the error of law in the District Court's consideration of the fact that she has been, ever since she arrived, in an unsettled status? I guess her position would be as to the definition of settledness. And we submit that settledness refers only to an immediate threat of removal, one that is concrete at the time of trial, not one that goes towards the hypothetical future of what may happen over three years from now. But the District Court doesn't talk about three years from now. It says you've been unsettled here because of your immigration status. I'm sorry, American law is that way, but it is that way. What is the error in that? It's not recognizing that the sheer fact that A.C.A. doesn't have immigration status, that alone does not mean that she's unsettled. No, he doesn't say it's a per se rule. He just says, I'm taking this into account. So taking that into account to the detriment of all the other factors is what we would submit. Okay, so it's an abuse of discretion. You think he gave too much weight to that factor. To a factor that doesn't indicate unsettledness to a sufficient degree to outweigh all the other many factors that go towards this inquiry. Okay, I have a few other questions. I'm concerned about the breadth of the injunction order that was entered here. And it appears to give the father sole custody of the child from the time she goes to Logan Airport. But there's no Brazilian court order on custody. Apparently the father never went to a Brazilian court to get custody. Under Brazilian law, isn't it presumptively joint custody? Yes, to my understanding, yes, it would be presumptively joint custody. To the extent the injunction, if the injunction remains, can be read to deprive the mother of custody, that strikes me as well beyond the remit of any Hague Convention court. They don't decide custody matters. We would agree, Your Honor, based on the plain language of ACARA, which is the Convention's Implementing Statute. That statute disclaims that judicial courts cannot enter into the underlying merits of the custody dispute between parents. Okay, so does the mother intend to go, if there is an affirmance, does the mother intend to go back to Brazil? So, Your Honor, that's a tough decision to make. She's concerned about her own safety, about M.A. safety. But the fact is that as ACA's primary caregiver, she should be able to decide pending determination by Brazilian courts. And just to touch upon who she would go with. I ask you a question. Is the answer that your client hasn't decided yet? Yes, Your Honor, yes. Okay, thank you. If I could just have 30 seconds to wrap up. Yes. So the Convention is concerned with protecting children once that one-year period has passed. And we submit that this judicial court erred not only in ignoring the fact that ACA is well settled in the United States, but also by confirming that she would be subject to a grave risk of physical or psychological harm by ordering ACA directly into Nelio's custody. And for that reason, we submit that this case, that the judgment warrants reversal. Good afternoon, Your Honor. Susan Stenger on behalf of the father, and with me is my colleague, Elizabeth Crowley, who tried the case. May it please the court. The Hague Convention has a presumption, recognizes a presumption in favor of returning the child. Courts have said that the affirmative defenses on which the mother is relying should be narrowly construed. The Article 18 of the Convention, which I believe, Judge Lynch, you were alluding to, says that... Maybe you could get into the facts of this case. Of course, Your Honor. Just making the point that even if the judge finds one of these affirmative defenses exists, he has the power to have the child returned. On the issue of the well-settled defense, on both defenses really, the one thing that the mother's brief doesn't recognize is that the judge was the fact finder. The judge weighs all the evidence. The judge draws inferences. The judge decides who and what he believes. And the judge here clearly did not believe a lot of what the mother submitted, or perhaps even from witnesses over whom she had influence. And the mother's brief is written as if everything word that came out of her mouth is set in stone, and the judge did not have to accept her testimony. On the issue of the well-settled defense, aside from the immigration issue, there is plenty of evidence that the situation was not stable here. The mother and the children live in the basement of someone's home. They pay rent to live in the basement. They have no lease. Mother's work, in the child's therapy records from October 18, about six or seven months before trial, it states that mother is having trouble finding a job. At trial she testified she was working for a paint company, doing some painting. Sometimes they send me to a restaurant to work. Sometimes they send me to clean houses. Mother doesn't have a green card. There's no evidence. She has any sort of work permit or visa. The court was free to infer that she's working under the table. That's an unstable situation. Her employer could be raided at any time. She could lose her job. And very importantly, the child herself is not that stable. Counsel, did the district court cite in its consideration all these factors that you identified? The living in the basement, the green card, the tardiness? I know you talk about it in your brief, and if it's there, I guess you can argue that he drew negative inferences from that. But I don't think in his decision, I understand it's a bench decision. Yes. Certainly a very thoughtful one, a bench decision. But I don't remember him citing all this stuff. You're correct, Your Honor. The judge did not itemize any findings on those issues. But he did say, this is a very fact-intensive analysis that I have to do, and I have considered all of the factors. And this court is entitled to make supplementary findings from the evidence. And also under the harmless error rule, the judge could have made those findings and come to the same conclusion. That means we don't require judges, when they reach a conclusion, that the child is not well settled to lay out all the evidence? That's correct, Your Honor. So there's nothing wrong with you citing the evidence in your brief that supports the conclusion that's reached. The immigration question, I think, is a difficult one. There is a question about how much weight it was given. And obviously, immigration status could not be a per se rule against well settled. Do we agree on that? I agree it's not a per se rule, Your Honor. I will also say, in terms of the hearing notice the mother received, just after judgment in this case, saying you have to come back in three years for an asylum hearing, she brought a motion for a new trial on that evidence. But she testified at trial that the process for her asylum proceeding could take another two to three years. So there was nothing new about that. It was just formalized. In terms of whether the court can consider it, although the judge does discuss that in the hearing and in his written injunction order, he doesn't say that that was dispositive or that he gave it more weight than any of the other circumstances. No, he doesn't. You've heard my concerns about the scope of the return order. Yes, Your Honor. It's clear, and the judge puts right in his decision, I'm not allowed to make custody determinations. But nonetheless, he seems to have. Well, he, and this was not disputed on appeal by mother, that under Brazilian law, the father had custody rights to the child. Yes, so they both have custody rights. Yes. So why is he remanding simply to the father's custody rights? I believe it was his understanding that mother was unlikely to go back to Brazil. Mother is free to go to Brazil. It doesn't much matter, does it? Doesn't she still retain custody rights if he wanted to do something that required, say, surgery or something, that required the consent of both parents? Does it matter that she's not in Brazil? I don't think so, Your Honor. I think those rights continue to exist. But she or she will have to start a proceeding in Brazil. That's what the whole hate convention is about. She has to bring a custody proceeding in Brazil. In the meantime, I don't think she loses her rights, but the child is going to be living with the father. She doesn't want sole custody. My concern is that she not be stripped of the custody she has and that the order not be read to do that. I take it you have no objection to the order being clear that whatever custody rights she has at this time, nothing in the order deprives her of those rights? Excuse me one minute. Absolutely, Your Honor. Thank you. I did just want to point out in the child's therapy records, which are in the impounded volume of the appendix, the child was first brought, I believe, to therapy in the fall of 2018. The Hague petition was actually filed November 9th of 2018. A week before the Hague petition was filed, the therapist diagnosed the child with adjustment disorder, with anxiety. And on January 8th of 2019, about six months before trial, the records say that mom is back with her boyfriend, but they're fighting again. On February 27th, the records say that through storytelling, the child is expressing her sadness and anxiety about separation anxiety from father. March 6th of 2019, the child is not happy or excited as she used to be. She doesn't like school. She doesn't understand math. She's bored. In my office, she's happy when she's playing with my sandbox, which reminds her of Brazil. All of that also speaks to the issue of whether the child is well settled. Counsel, the district court a number of times expresses disapproval of the way in which the mother handled the situation, taking the child illegally out of the country. Yes. Understandably, that was not appropriate. But the district court, it would seem, in deciding the affirmative defenses before it, including the well-settledness, was somehow incorporating that into his analysis. If that's so, would that be appropriate? I'm sorry, I don't understand the question. Well, he's expressing disapproval of the way in which the mother handled the situation. In discussing the affirmative defenses, he seems to be bringing that disapproval into his analysis. Is that appropriate? I don't think it's inappropriate. It wasn't the motive. It wasn't the basis on which he made his decision. But he's weaving it into the fact that he doesn't believe mother. He thinks she orchestrated, brought the child illegally, but then started building this case to try to show a well-settled defense. It speaks a lot to his credibility assessment of a lot of the evidence here. If there are no other questions, thank you very much. Just to touch upon a couple of issues brought up by my sister counsel. In terms of credibility determinations made by district court vis-à-vis the mother's actions, we submit that those concerns are, again, outside of the scope of the Article 12 inquiry. The district court made judgments as to the mother's intent in bringing ACA to the United States and in pursuing the asylum petition, which was simply not based on the record. There was no indication that Marcellini secretly orchestrated any plan to bolster ACA's appearance of settleness. In fact, the October 30th calendar hearing was scheduled before Marcellini was even served with this action. Marcellini could not have brought up or pursued it any more timely without, you know, she could not have pursued it any more timely than she did filing her petition on that date, considering her ineffectiveness of counsel prior to that date. And just to also address the issue of ACA's transition to the United States, we recognize that transitions for any child is tough, especially when moving from one country to the other. But I believe that ACA's statements to her therapist must be read in full to the latest statements made during the time of trial. During the more recent statements, ACA expressed her desire to do anything to remain in the United States. In fact, I believe she said that if she returned, she would do anything to convince her father to send her back to the United States, because home is where she is in America. So we submit that once that one-year period in Article 12 elapses, and this Court should consider these statements, should consider the child's interest in remaining settled based, in addition to that, on the extensive connections that she's made to the United States during that time. If there are further questions, you're best not to. Thank you all. All rise.